# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS



FILED
FEB 17 2023
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Jacqualine S. Jarju

(Name of the plaintiff or plaintiffs)

v.

St. John's Hospital of the Sister Third Order

(Name of the defendant or defendants)

CIVIL ACTION

NO. 23-3038

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. Plaintiff ☐ DOES ☒ DOES NOT demand a jury trial.

### I. PARTIES

2. The plaintiff is Jacqualine S. Jarju,
whose street address is 1602 S. Pasfield St.
(city) Springfield (state) IL (ZIP) 62704
(Plaintiff's telephone number) (217)-691-0634

3. The defendant is St. John's Hospital of the Sister Third Order, whose street address is 4936 Laverna Rd
(city) Springfield (state) IL (ZIP) 62707
(Defendant's telephone number) (217)-544-6464

4. The alleged discrimination occurred at St. John's Hospital 800 E. Carpenter
(city) Springfield (state) IL (ZIP) ~~62703~~ 62769

5. The plaintiff [*check one box*]

    (a) ☐ was denied employment by the defendant.

    (b) ☐ was hired and is still employed by the defendant.

    (c) ☒ was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about, (month) __7__, (day) __29__, (year) __2021__

## II. JURISDICTION

7. Jurisdiction over this claim is based on 28 U.S.C. § 1331. Plaintiff alleges that the defendant(s) discriminated against Plaintiff because of Plaintiff's:

    ☐ Age (The Age Discrimination in Employment Act, 29 U.S.C. § 621)

    ☐ Color (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e)

    ☒ Disability (The Americans with Disabilities Act, 42 U.S.C. § 12101 and/or The Rehabilitation Act, 29 U.S.C. § 701)

    ☐ National Origin (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e)

    ☒ Race (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e)

    ☒ Race (42 U.S.C. § 1981)

    ☐ Religion (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e)

    ☐ Sex/Gender (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e)

    ☐ Sex/Gender (Equal Pay Act, 29 U.S.C. § 206)

    ☐ Use of Leave (Family and Medical Leave Act, 29 U.S.C. § 2611)

    ☐ Other (list): _____

8. Plaintiff ☒ HAS ☐ HAS NOT filed a charge before the United States Equal Employment Opportunity Commission (EEOC) relating to this claim of employment discrimination. **[Attach a copy of charge to this complaint.]**

9. Plaintiff ☐ HAS ☒ HAS NOT filed a charge before the Illinois Department of Human Rights (IDHR) relating to this claim of employment discrimination. **[Attach a copy of charge to this complaint.]**

2

10. Plaintiff ☒ HAS ☐ HAS NOT received a Right to Sue Notice. If yes, Plaintiff's Right to Sue Notice was received on or about (date) 1/25/2023; but letter is dated 11/21/22
[Attach copy of Notice of Right to Sue to this complaint.]

### III. FACTS IN SUPPORT OF CLAIM

11. The defendant intentionally discriminated against Plaintiff [*check only those that apply*]:

   (a) ☐   by failing to hire the plaintiff.

   (b) ☒   by terminating the plaintiff's employment.

   (c) ☐   by failing to promote the plaintiff.

   (d) ☒   by failing to stop harassment;

   (e) ☒   by failing to reasonably accommodate the plaintiff's disabilities.

   (f) ☐   by failing to reasonably accommodate the plaintiff's religion.

   (g) ☒   by retaliating against the plaintiff because the plaintiff did something to assert rights protected by the laws;

   (h) ☒   by coercing, intimidating, threatening or interfering with the plaintiff's exercise or enjoyment of rights;

   (i) ☒   with respect to the compensation, terms, conditions, or privileges of employment;

   (j) ☐   other (specify):_____

_____
_____
_____
_____
_____
_____

12. State here briefly and as clearly as possible the essential facts of your claim. Describe precisely how each defendant in this action is involved. Give dates and places. Concentrate on describing as clearly and simply as possible what employment action or situation you allege to have been illegal and how it violated your rights. It is not necessary to make legal arguments or cite any cases or statutes.

*See Attached

- Senior worker with disabilities started 7/26/21
- Employer failed to accommodate when I was injured on the job on 7/29/21. Did not recieve information on Worker's Comp rights & process.
- Was reprimanded for missing work due to illness and as an accommodation for treatment of my disabling condition
- Was harassed by employees. And recieved reprimand when reported to higher ups.
- Wrongfully terminated after asking about accommodations on 10/4/21.

13. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

(a) ☐ Direct the defendant to hire the plaintiff.

(b) ☐ Direct the defendant to re-employ the plaintiff.

(c) ☐ Direct the defendant to promote the plaintiff.

(d) ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

(e) ☐ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f) ☒ Direct the defendant to (specify): Clear plaintiff's employment record with company thereby, rendering plaintiff eligible for re-hire or hire, if plaintiff so chooses to apply.

4

_____

_____

_____

_____

_____

(g) ☒ If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☒ Grant such other relief as the Court may find appropriate.

_____
(Plaintiff's signature)

Jacqualine S. Sanju
_____
(Plaintiff's name)

1602 S. Pasfield St.
_____

_____
(Plaintiff's street address)

(City) Springfield (State) IL (ZIP) 62704

(Plaintiff's telephone number) 217 - 691-0634

Date: 2/17/23

Jacqualine S. Jarju -
Statement of facts
217-691-0634

7/26/21-Started job as Overnight Cook/Cashier from 8pm to 4:30pm.
Duties included prepping food for the ready-to-eat coolers, warming soups, stocking shelves with packaged snacks, preparing coffee, cleaning counters, vacuuming and setting up cash register for sales between 12:30 am. to 3:30 p.m.

7/29/21- Sustained ankle injury while stocking coolers. Went to the E.R. after shift. X-ray showed no broken bones. Was fitted with a hard boot, given narcotics for pain. Also, given three days off work. Because I wasn't scheduled for the weekend, asked the doctor if I was able to work the next day. He said I could if I didn't walk too much and if I wore the hard boot. I called my supervisor and they said they would allow me to sit to do the cashier work and someone else would do the other work which required walking.

7/30/21- Worked as agreed without incident. Used a pub chair from the cafeteria and it was not the best for my condition. However, it was the only available chair to use at the time. Another employee was using a pub chair as well for her accommodation. So, the supervisor did not give me any problems.

8/2/21- Scheduled to work. But Called off because was too groggy due to taking prescribed pain medication for ankle injury.

8/5/21- returned to work on scheduled day with hard boot as required. No issues.

8/6/21 - 8/9/21 trained with Black cook (Alte) on grill and prepared and served entrees on 8/8/21. There was rice leftover and I put in cooler for donations. Alte gave me and two other staff members food leftover from the grill to take home. We disposed of the rest. No issues.

8/11/21- Harassment: Facilitator (Dorinda) repeatedly interrupted work duties, discussed my work status with other employees and made inappropriate comments about my work performance.

Dorinda's behavior was getting in the way of my doing my job.

She wanted me to work in the back filling pudding cups instead of performing my assigned duties as cashier in the front of the house. The person (Mark) did not want me to work with him. And there was plenty of product available on the shelves. There was no one assigned to do my job for the evening.

I contacted my supervisor by text and phone to explain the situation and ask for help.

He apologized and said we could talk about it the next day. I told him that if her behavior continued I would have to leave.

I overheard Dorinda talking about my work status with another employee (Dave) who was also Dorinda's significant other.

I expressed my concerns to Dorinda and asked why was she preventing me from doing the cashier work. She stated that she was worried as to why I was persistent on doing the cashier work? I was confused at this kind of questioning. I had been doing the job for weeks without issue and was assigned to do that job that shift. I told her that I felt she was harassing me and I was uncomfortable with her behavior. I informed her that I told our supervisor that I would leave if she continued. I also mentioned that I was late because I had a car accident in the hospital's parking garage. And that I just needed to get the floor ready and could work with Dave after.

She asked me to leave work instead of addressing my concerns about her behavior. I told her that I was there to work and didn't need to take time off. I felt she was trying to get me out of her way since she was working the grill that shift. I felt she didn't want to work with me.

After the discussion, I was going to ~~call the~~ call security to open the office so I could get the cash drawer out of the safe. Mark said Dorinda was in the office and it was open.

When I went to the office the security guard was there anyway. I asked who called? He said he didn't know. I asked Mark if he called and he said no. Dorinda didn't say anything. I just said I needed to get the cash drawer but the room was already open.

I decided to leave instead of continuing and let ~~Mark~~ Manl [Manl] know I was leaving so he could take over.

Left work early to avoid further harm. Reported harassment to the manager.

8/12 -8/14/21- Off work for COVID symptoms and testing.

8/16/21- Retaliation I: Requested meeting with supervisors about harassment. However, met the head of the department for the first time, Steve. Up until that point, I thought my supervisor was the head. Given written warning for absences and leaving work early. Promised an investigation about harassment.

8/19/21- Retaliation II: On the day I was scheduled to work, received a phone call to report to HR for the first time. Met the HR staff in person for the first time and Steve, the head of the department was in the office as well. Accused of stealing food. The incident was reportedly the weekend I worked with Alte and he gave me and staff members food from the grill. Given a verbal reprimand. Harassment not addressed. Asked again about process of reporting ankle injury and Worker's Comp complaint process. Given time off (unpaid) to get ankle treatment in place. Given instructions for submitting injury report on internal servers. Submitted report directly after meeting. Asked to submit request for accommodations.

8/23 - 9/13/21: Failure to accommodate, retaliation and other discrimination: Denied reasonable accommodations for regular duties. Denied worker's comp. Obtained lawyer to file Worker's Compensation claim with State of Illinois.
Negotiated return to work with modified or light duties with accommodations. Received offer to return to work in a sedentary capacity for one month per doctor's orders.

9/20 - 9/30/21: Failure to accommodate ankle injury, harassment, intimidation and retaliation. Outline of series of events leading to termination:

9/20/21- Completed orientation modules on the computer in the company's library. Monitored-- not regular protocol.

9/21/21- Began desk job (Conducting basic COVID screening by taking temperatures of people entering building and distributing masks) from 2pm to 10pm at the women's and children's center. Discovered I could not walk the distance to and from work from the parking complex due to my ankle injury. Security agreed to bring the car to me at the end of my shift.

9/27/21- Waited for my car after my shift. Instead, the head of security who was my supervisor came 30 minutes later and was upset. Took me to my car instead of bringing it. He stated that he was short on staff and that this was a disruption. He said he stayed past his shift to help me and would not take me to my car again.

On 9/28/21- I went to clock out at the end of my shift and when I returned, I found out Security left keys at my desk instead. I called and was told that they had an emergency so I would have to wait until someone was free. Waited 90 minutes and ~~knew~~ No one came. Called a friend to take me. Left premises at around Midnight.

9/29/21- Employer failed to accommodate: Called the head of security who was the supervisor for the desk job position to see if there was another solution that could be done to ensure I get to my car on time after work. He said guards can escort me to the car like they do other employees. Would have to wait until they did. Was told to contact HR to see if they had any other solutions. I called and left a message. Also, sent an email.

9/30/21- HR called me. I asked them for accommodations. They said parking was not their job. After a discussion on what ways they accommodate other employees including asking where I could find accessible parking spaces on the campus grounds, I decided to find my own solution. I talked with one of the parking attendants who had been helping me in the past and he provided a parking space in the parking garage near an elevator. Therefore, I was able to find an accessible solution on my own and was able to get back and forth to the car adequately. Completed the week without any issues.

10/4/21: Retaliation/Wrongful termination: HR called me to come to their office regarding accommodations. But, that was not true. At the meeting, I was accused of stealing food

delivered to the desk on 9/28/21– the same day I could not get accommodations to get to my car.

Explained that I disposed of food left at the desk that was unsafe to eat.
I was questioned about using a red shopping bag to hide the fact I was taking food. However, I used the shopping bag to transport my purse and any other items I needed to carry because I used a cane with my other hand. I explained I was not hiding anything and no one said it was a problem. It was a late hour and I was simply cleaning the area before I left including food that should have been disposed of.

HR said they could not prove I didn't eat the food or that I threw it away.

Terminated for misconduct.

I have certification as a Food Safety and Sanitation Manager and qualified to know food safety procedures. The guard with me on duty did not say anything was wrong about disposing of the food. However, he later filed a complaint, according to the exhibits from St. John's response that stated that he was disturbed by my behavior.

Also, the earlier incident on 8/19/21 where I was accused of stealing food, was linked to this and that is what HR used to justify the misconduct determination.

The pictures St. John's included in their exhibit just shows me removing the food from the desk. This was the day I was sitting waiting for my car until past midnight. At that point, the food had been sitting for at least six hours. I had asked the guard if it was ok to throw it out as I was leaving. And he said he didn't care.

There is another photo of me leaving work and following a Black security guard. That was one of the nights I trained with Alte and he gave me food. The security guard was taking me to my car. This photo suggests something different. I have the security guard's name and number. He quit and is working elsewhere.

I spoke with Alte too. He supported me and said he gave me food like he did to others. However, he may not cooperate. He is still having trouble on the job. But, when I asked him to talk to the lawyer regarding my unemployment, the lawyer said he would not be a good witness.

Conclusion:

I was not informed of any issues with my behavior or work until I requested accommodations. In fact, I had been commended on my work and interactions with the public.

Before I was terminated and after I injured my ankle at work, I did not have any complaints about my work until I requested accommodations and inquired about Worker's Compensation procedures.

I was not actively included in any investigations in which I could respond to accusations or state my point of view before I was called into HR offices.

The employer resisted and denied accommodations for both my permanent and temporary disabilities.

My rights to information and process of Worker's Compensation reporting were violated. I do have a WC case pending in Illinois at this time represented by Strong Law Offices.

I was harassed by employees. And falsely accused of stealing or misconduct.

My ankle is still not fully healed. I have not been able to work. And was in treatment from 9/3/21 - 8/21/22. The torn tendon was not discovered until after several weeks of physical therapy. I had to re-enter physical therapy and wear a brace. Throughout my treatment, I've had to wear a hard boot, cast, soft boot, soft brace plus have been fitted for orthotics.

My permanent condition is cervical spinal stenosis, sciatica and herniated discs in my lower back. During the time I was doing the sedentary work, I was fitted for a back brace.

One of the exhibits show a guard complaining about my doing Internet searches for the brace during work time. There was a lot of downtime and guards and myself were allowed to use the computer. There were guards who used the computer during their shift to do homework. My searches were work related.

I also believe I was harassed and discriminated against because of my race. The food incident involved another African American who is still having issues on the job. I am not sure if he is still employed by St. John's. I also was unusually monitored even when I was in the library finishing my orientation modules. I got a call from the HR personnel stating that it was important that I be observed finishing the modules. Also, the fact that I was the only African American working the desk when I was doing sedentary work and that I was assigned to work with security guards. From the employer's response, they are stating that my injury was not legitimate or was a pre-existing condition.

For several weeks I was not paid, I was able to get some pandemic unemployment relief. But, due to the employer's rules, I did not qualify for any PTO or short-term disability benefits. I was given unpaid leave status for a short period before I started back on light duty.

When I applied for unemployment benefits after termination, the employer challenged my claim as fraudulent. After I proved that to be untrue, the employer claimed misconduct. After I filed an appeal for that charge, I won most of my benefits. However, I was not approved for benefits from 10/4/21 2/6/22 because I was unable to file a claim during a certain of time. When I went through the first appeal, I stated that the employer discriminated against me and trying to deny

me benefits was further harassment and retaliation. The employer decided to not contest and I won the appeal.

When I agreed to mediation with the EEOC the mediator stated that the employer wanted to just settle without mediation. I stated that I would like $50,000 and my record cleared. The mediator did not get back with me and EEOC opened the investigation. I did not hear back from EEOC for at least four months. And the investigator wanted to give me one week to respond to the employer's exhibits and defense.

I was unable to copy everything in that short period of time and was sick— that was also the time I found out about the torn tendon.

I ended up going through treatment for the torn tendon and then found out I had an intestinal infection which needed aggressive treatment of antibiotics.

After the holidays, EEOC closed the investigation and issued a Right to Sue.



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Chicago District Office**
230 S Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

**To:** Ms. Jacqualine S. Jarju
1602 S. Pasfield St
Springfield, IL 62704

**Charge No: 440-2022-01788**

EEOC Representative and email:  Kimberly Engram, Sr. Investigator
kimberly.engram@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 440-2022-01788.

On behalf of the Commission,

Digitally Signed By: Julianne Bowman
11/21/2022
Julianne Bowman, District Director

**cc: St. John's Hospital of the Sister Third Order**

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 440-2022-01788 to the District Director at Julianne Bowman, 230 S Dearborn Street

Chicago, IL 60604.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.
- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- ✓ **Only one** major life activity need be substantially limited.
- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

Enclosure with EEOC Notice of Closure and Rights (01/22)

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.
- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For moreinformation, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.*