IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

JACQUALINE S. JARJU, )
　)
　　Plaintiff, )
　)
v. ) Case No. 23-cv-3038
　)
ST. JOHN'S HOSPITAL OF THE )
HOSPITAL SISTERS OF THE )
THIRD ORDER OF ST. FRANCIS )
d/b/a HSHS ST. JOHN'S HOSPITAL, )
　)
　　Defendant. )

OPINION

**COLLEEN R. LAWLESS, U.S. District Judge:**

On February 17, 2023, Plaintiff Jacqualine Jarju filed a Complaint (Doc. 1) against Defendant St. John's Hospital of the Hospital Sisters of the Third Order ("St. John's") alleging St. John's discriminated against due to her disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA").[1] Before the Court is St. John's Motion for Summary Judgment (Doc. 30).

I.　BACKGROUND

St. John's Motion includes a section listing the undisputed material facts in this case. (Doc. 30 at 2-8: 1-33); *see also* Local Rule 7.1(D)(1)(b) (stating that a motion for summary judgment must include a section listing the undisputed material facts). Under

---

[1] Plaintiff checked other boxes on her complaint form regarding race discrimination and harassment. However, she later testified that the lawsuit was fundamentally about whether her termination was lawful regarding her disability. Other claims were not fully developed.

Local Rule 7.1(D)(2)(b), a party opposing a motion for summary judgment must respond to the moving party's undisputed material facts and provide additional material facts, which must be supported by admissible evidence.

Jarju has not complied with the Court's Local Rules as she failed to file a response despite being granted an extension to do so. *See* July 17, 2024 Order. She has not noted which of St. John's facts are undisputed material facts, disputed material facts, disputed immaterial facts, or undisputed immaterial facts. Civil LR 7.1(D)(2)(b)(1-4). Under Local Rules 7.1(D)(2)(b)(6) and 7.1(D)(3)(a)(5), a party's "failure to respond to any numbered fact will be deemed an admission of fact." Civil LR 7.1(D)(2)(b)(6). Thus, the following material facts are based on St. John's properly supported brief and the Court's review of the provided record.

St. John's hired Jarju as a "Cook/Cashier" ("Cook") on July 26, 2021. (Doc. 30 at ¶ 1). On July 29, 2021, while at work, Jarju injured her ankle while at work. (*Id.* at ¶ 2). During a meeting on August 19, 2021, Jarju informed her managers that she needed to take time off work to have her ankle injury evaluated. (*Id.* at ¶ 5). Because she did not qualify for FMLA leave, management removed her from the schedule until she could have her ankle injury addressed. (*Id.* ¶ 6). At the same meeting, human resource ("HR") representatives accused Jarju of inappropriately removing food from the cafeteria on prior occasions. (*Id.*). Jarju admitted that she did take food that was given to her by a coworker. (*Id.*). She later stated that the meeting and accusations made her so nervous that she would not take food again, even if it was offered. (*Id.*). HR further explained that

proper procedure required paying for food or receiving management approval for taking unpaid food. (Doc. 30, Ex. 3 at 2).

On August 20, 2021, Jarju submitted paperwork requesting ADA accommodation for medical conditions that existed prior to being hired by St. John's in relation to the cook position. (*Id.* at ¶ 7). The submission included a doctor's note from May 2021 generally outlining Jarju's medical conditions and symptoms. (*Id.*). However, the note did not explain any specific accommodations the doctor recommended and did not provide support for the accommodations that Jarju requested in her original paperwork, such as lifting restrictions, an ergonomic chair, and additional breaks. (*Id.* at ¶ 7).

A long email chain, and other discussions, ensued between HR and Jarju. (Doc. 30, Ex. 11 at 1-13). A human resources generalist sent an email to Jarju on August 26, 2021, stating:

> "Per our conversation, we are needing further clarification on:
> -Lifting and carrying items greater than 5 pounds
> -Ergonomic chair needs, including where a chair would be needed in the department
> Please also have your physician provide a letter clarifying your pound restriction for lifting, carrying, sitting and frequency of breaks restriction."

(*Id.* at 11). On September 1, 2021, another human resources generalist followed up by email, asking Jarju if she would be able to submit the additional information requested by her colleague by September 3, 2021. (*Id.* at 10). The same day, Jarju responded that she was working on getting the documentation. (*Id.* at 9-10). Additionally, she requested a copy of St. John's accommodation policy, which was immediately resent to her because it was originally provided to her in July 2021. (*Id.*) After some back and forth, Jarju and

HR agreed that discussion about accommodations for the Cook position would resume when Jarju obtained a doctor's note that specifically addressed her accommodations request. (*Id.* at ¶ 9).

On September 2, 9, and 14, 2021, Jarju submitted letters from a Doctor of Podiatric Medicine (DPM) regarding her recent ankle injury. (Doc. 30 at ¶¶ 11-12). Together, the letters requested medical leave and stated that upon her return to work, she needed to be restricted to "sit down work only for one month in boot." (Doc. 30, ex. 10). On September 21, 2021, Jarju returned to work. (Doc. 30 at ¶ 12). Based on her DPM's noted restrictions, St. John's gave Jarju a temporary sedentary position greeting, taking temperatures, and handing out masks at the Women's and Children's Clinic. (*Id.* at ¶¶ 12-13).

On September 28, 2021, two bags of food were delivered for a patient to the security desk where Jarju was working. (Doc. 30 at ¶ 19). At some point, Jarju looked in the bags. (Doc. 30 at ¶ 20). One bag contained soda and candy. The other contained chicken wings. (*Id.*). Some of the chicken wings spilled on the counter. (*Id.*). Jarju cleaned up the mess. (*Id.*). Eventually, she placed the chicken wings in her personal tote bag which she took with her at the end of her shift. (*Id.*). A security guard who witnessed the events reported it to HR. (*Id.* at ¶ 21).

On October 4, 2021, HR began an investigation into the security guard's allegation of food theft. (*Id.* at ¶ 27). The security guard stated that Jarju asked him if "he would like to share the contents" and later stated "you sure you don't want these? They are going to go to waste." (*Id.* at ¶ 22). Further, HR reviewed the video footage showing that Jarju

placed the food in her bag and left the building with it. (*Id.* at ¶ 28). The video was also consistent with the security officer's account. (*Id.* at ¶ 27).

On October 4, 2021, HR called Jarju into a meeting about the incident. When asked if she took the food, Jarju denied doing so. (*Id.* at ¶ 27). Eventually, she admitted that she took the food home and disposed of it because it sat out for six or more hours and was not safe to eat. (*Id.* at ¶ 22). After being presented with the video evidence disputing her timeline, the security guard's statements and her past incidents of taking food that did not belong to her, Jarju admitted that she could understand how that may be construed that she took the food for personal consumption. (*Id.* at ¶ 24). The HR representatives that were present at the meeting then took a break to consult the HR Director. (*Id.* at ¶ 30). Jarju was terminated due to the repeated theft of unapproved food with the investigative conclusions being memorialized in a report. (Doc. 30, ex. 3).

### III. DISCUSSION

#### A. Legal Standard

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if a reasonable trier of fact could find in favor of the nonmoving party. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). A factual dispute is only material if its resolution might change the suit's outcome under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court must construe facts in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving

party's favor. *Woodruff v. Mason*, 542 F.3d 545, 550 (7th Cir. 2008). "At summary judgment, a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Paz v. Wauconda Healthcare & Rehab. Ctr., LLC*, 464 F.3d 659, 664 (7th Cir. 2006) (internal quotations omitted).

The movant bears the initial responsibility of informing the court of the basis for the motion and identifying the evidence the movant believes demonstrates the absence of any genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party does so, the non-moving party must then go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 255 (quotation and footnotes omitted).

As previously stated, Jarju's failure to respond to any numbered fact is deemed an admission of the fact that is supported by the summary judgment record. Civil LR 7.1(D)(2)(b)(6). Although deference may be given to pro se litigants, Jarju's pro se status does not excuse her from complying with rules of civil procedure. *Cady v. Strahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).

In its Motion for Summary Judgment, St. John's argues that Jarju fails to establish her prima facie case for retaliatory termination. Additionally, St. John's contends that it did not fail to accommodate Jarju because discussions regarding her accommodation were ongoing when she was terminated for cause.

### B. Retaliatory Termination

Pursuant to the ADA, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [it]." 42 U.S.C. § 12203(a). The ultimate burden of demonstrating that St. John's engaged in unlawful retaliation lies with Jarju. *Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004). To survive summary judgment, Jarju must establish that the "record contain(s) sufficient evidence for a reasonable factfinder to conclude that a retaliatory motive" was the reason for her termination. *Lesiv v. Ill. Cent. R.R. Co.*, 39 F.4th 903, 911 (7th Cir. 2022). Further, Jarju must "produce evidence that a retaliatory motive *actually* influenced the decision-maker, not merely that it *could* have." *Brown v. Advoc. S. Suburban Hosp.*, 700 F.3d 1101, 1108 (7th Cir. 2012) (emphasis in original).

Jarju must submit evidence that: (1) she engaged in protected activity; (2) her employer took an adverse action against her and (3) there was a "'but for' causal connection between the two." *Parker v. Brooks Life Science, Inc.*, 39 F.4th 931, 936 (7th Cir. 2022) *citing Kotaska v. Fed. Express Corp.*, 966 F.3d 624, 632 (7th Cir. 2020). St. John's does not dispute Jarju engaged in a protected activity by requesting accommodations and her termination is clearly an adverse action. St. John's argues that Jarju has not presented evidence that her request for accommodation is the "but-for" reason that she was terminated.

Jarju can prove causation either through evaluation of the evidence as a whole or the burden-shifting framework outlined in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973); *Dickerson v. Bd. of Trs. Of Cmty. Coll. Dist. No. 555*, 657 F.3d 595, 601 (7th Cir. 2011). Under the *McDonnell* burden-shifting framework, Jarju must demonstrate that she "(1) engaged in protected activity; (2) was performing her job satisfactorily; and (3) was singled out for an adverse employment action that similarly situated employees who did not engage in protected activity did not suffer." *Dickerson*, 657 F.3d. at 601-602. If Jarju satisfies this burden, the burden shifts to St. John's to offer a non-invidious reason for Jarju's termination. *Id.* at 602. If St. John's meets the burden, Jarju must then demonstrate that the reason that St. John's provided is pretextual. *Id.*

Jarju has failed to meet her initial burden because she has not provided evidence that she was singled out for an adverse employment that similarly situated employees who did not engage in protected activity did not suffer. As such, Jarju cannot prevail under the burden shifting framework.

Jarju also failed to provide evidence as a whole from which a reasonable factfinder could conclude that her accommodation requests were the reason for her termination. Jarju merely states in her complaint that she was not "informed of any issues with [her] behavior until [she] requested accommodations" and that she "did not have any complaints about [her] her work until [she] requested accommodations." Timing alone is rarely enough to establish causation. *Parker*, 39 F.4th at 937. Suspicious timing "combined with additionally evidence of pretext" can justify denial of summary judgment. *Id.* In light of the intervening events that include at least two instances of

removing food from the workplace without permission, the mere fact that Jarju was in the process of negotiating accommodations is insufficient to show St. John's reason for terminating her was a pretext. *See Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 675 (7th Cir. 2011) (holding that the Plaintiffs intervening violation of employee guidelines broke the inference of causation based on the five-day interval between his complaints and termination).

### C. Failure to Accommodate

To establish a failure to accommodate claim, Jarju must show that: (1) she is both qualified and has a disability; (2) St. John's was aware of the disability; and (3) St. John's failed to accommodate her disability. *Guzman v. Brown County*, 884 F.3d 633, 642 (7th Cir. 2018). As with her retaliation claim, St. John's does not challenge the first two elements but argues Jarju has not met her burden of proffering evidence that establishes a disputed issue of material fact as to whether St. John's engaged in the interactive process to determine a reasonable accommodation.

After an employee discloses their disability to their employer, the ADA "obligates the employer to engage with the employee in an 'interactive process' to determine the appropriate accommodations under the appropriate circumstances." *Gile v. United Airlines*, 213 F.3d 365, 373 (7th Cir. 2000). This process requires an employer to engage in a flexible give-and-take with the employee that can determine what reasonable accommodations, if any, that would allow the employee to continue their employment. *Id.* If there is a breakdown in the interactive communication, the court must "isolate the cause of the breakdown and then assign responsibility" for the breakdown. *Bultmeyer v.*

*Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1285 (7th Cir. 1996). In the process, "employees must make their employers aware of any nonobvious, medically necessary accommodations with corroborating evidence such as a doctor's note . . . before an employer may be required under the ADA's reasonableness standard to provide a specific modest accommodation that an employee requests." *Ekstrand v. Sch. Dist. Of Somerset*, 583 F.3d 982, 976 (7th Cir. 2009). Additionally, an employer may not be obligated to provide a specifically requested modest accommodation unless the employer is made aware of its medical necessity to the employee. *Id.*

Based upon the record, St. John's was engaged in the interactive process. Once Jarju provided a doctor's note regarding her intervening ankle injury, HR immediately made a sedentary position available to her for one month based upon the specific restrictions ordered by her doctor. Additionally, according to Jarju, the interactive process regarding her other existing disabilities was on hold until she was later cleared to return to her Cook position. Jarju stated that she was in the process of getting medical documents that HR requested with more specificity about necessary accommodations for the cook position at which time she would submit a new accommodation request. Therefore, a reasonable jury could not find that St. John's failed to accommodate Jaru's requests for accommodation.

## IV. CONCLUSION

For all of these reasons, St. John's Motion for Summary Judgment (Doc. 30) is GRANTED. The Clerk shall enter judgment and terminate the case.

ENTER: March 31, 2025

_____
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE